**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**BETTY FROST,**

      **Plaintiff,**

**v.**

**TECO BARGE LINE, INC.**

      **Defendant.**                          **Case No. 04-cv-752-DRH**

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

**I.  INTRODUCTION**

Plaintiff, Betty Frost, brings this case pursuant to the Jones Act for personal injuries she sustained to her lower back during her employ with defendant, TECO Barge Lines, Inc.  Plaintiff worked as a cook aboard Defendant's tow boat, the M/V Mary Lou.  On January 2, 2004, while working aboard the Mary Lou,  Plaintiff allegedly injured her back when she fell from a step stool, trying to reach for a box of cake mix in the galley pantry, on January 2, 2004.  Plaintiff claims Defendant was negligent in failing to provide a safe work environment and seaworthy vessel.  For this reason, Plaintiff has sued Defendant for damages.  In light of the upcoming trial, the parties filed various Motions in Limine, which this Order will discuss herein.

## II. <u>MOTIONS IN LIMINE</u>

**A.   Plaintiff's Motion in Limine to Exclude the Testimony and Evidence of Occupational Therapist David Brick**

### 1.   The Parties' Arguments

Plaintiff filed this Motion in Limine regarding David Brick (Doc. 30), to which Defendant responded in opposition (Doc. 44); Plaintiff thereafter filed a Reply (Doc. 48).   Plaintiff moves to exclude testimony and evidence from Occupational Therapist, David Brick.  According to the briefings, Brick is a licensed Occupational Therapist, specializing in the field of industrial rehabilitation and has practiced in this field for over 20 years.   In this case, Brick performed a functional capacity evaluation (FCE) on Plaintiff, at Defendant's request.  The FCE report is attached as Exhibit B to Plaintiff's Motion (Doc. 30, Ex. B).  Plaintiff's Motion is also based upon Brick's deposition testimony (Doc. 30, Ex. A).

Overall, Defendant counters by offering that over Brick's 20 years of practice as an Occupational Therapist, he has performed over several thousand FCE's and is thereby a recognized resource on functional capacity.  Defendant also lists what it believes some of Brick's qualifications allowing him to render these opinions: Brick has bachelor's degrees in physical education and occupational therapy; he has specialized in work hardening and functional capacity for the last 18 years; he teaches courses at University of Tennessee and gives seminars; previously, Brick worked in a psycho-social setting for a three-month rotation and continues to work closely with vocational rehabilitation experts; Brick has also studied back

injuries for 21 years, attending seminars all over the country (Doc. 44, pp. 1-3).
Defendant then asserts (1) there is a long standing principle allowing for a witness
to qualify as an expert "through experience or training alone," and (2) Plaintiff's
arguments should go to the weight and not admissibility of Brick's
opinions/testimony.   Therefore, Defendant argues that Brick's opinions/evidence
should not be excluded, as he is qualified through his extensive training, experience
and self-education regarding back injuries, even though he is not a medical doctor
or psychologist.

### 2.   Legal Standard

***Daubert*** requires that a district court ensure admitted scientific
evidence is reliable (pursuant to Rule 702 of the Federal Rules of Evidence) and also
relevant to the trier of fact (pursuant to Rule 402 of the Federal Rules of Evidence).
***Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993)**.  In
short, scientific evidence is reliable if it is "well-grounded in methods and procedures
of science."   ***Chapman v. Maytag Corp.,* 297 F.3d 682, 687 (7th Cir.
2002)(citing *Bourelle v. Crown Equip. Corp.,* 220 F.3d 532, 536 (7th Cir.
2000))**.  As such, the focus must be on the theory, principles and methodology of the
evidence or scientific testimony, and not merely the conclusions generated.   ***Id.*
(citing *Cummins v. Lyle Indus.,* 93 F.3d 362, 368 (7th Cir. 1996))**. ***Daubert*** set
out a nonexclusive list of factors or guidelines for a district court to consider when
analyzing the reliability of scientific evidence: (1) whether the theory can be and has

been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community.  **Cummins, 93 F.3d at 368**.

The test under **Daubert** is flexible, and there is "no requirement that an expert's testimony satisfy each of the listed factors."  **Chapman, 297 F.3d at 687**. Considering whether such evidence is relevant, it is crucial that the expert "'testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'"  **Dhillon v. Crown Controls Corp., 269 F.3d 865, 871 (7th Cir. 2001)(citing Ancho v. Penteck Corp., 157 F.3d 512, 519 (7th Cir. 1998))**.   A district court, therefore, plays the role of "gatekeeper" when determining whether to allow scientific evidence and/or expert testimony to be admitted at trial.  **Cummins, 93 F.3d at 370**.

### 3.    Discussion

Plaintiff seeks to exclude several of Brick's statements/conclusions,[1]

---

[1]  Plaintiff specifically lists the following of Brick's opinions and statements she believes are improper:
- Plaintiff's prior medical treatment was appropriate and that therefore she should have gotten better (Brick Dep., pp. 13-14, 61);
- Plaintiff has had ample time to recover. (*Id*. at 69);
- Improper references to Plaintiff's application for disability benefits (*Id*. at 39, 66-68);
- Plaintiff's prominent lateral disc bulge (as confirmed by MRI) can resolve, or should have already resolved (*Id*. at 64-66);
- Plaintiff would rather pursue disability than return to work (*Id*. at 66-68); and
- Plaintiff could manage her symptoms by "taking self-responsibility" (*Id*. at 72).

(Doc. 30, p. 2.)

which Plaintiff believes are speculative, unsupportable or otherwise inadmissible under Rule 702 of the Federal Rules of Evidence[2] or the ***Daubert*** standard (Doc. 30, p. 2).  Her argument in this regard is further divided into four sub-arguments, discussed herein.  Plaintiff's Motion (Doc. 30) is **GRANTED** as specifically outlined herein.

> a.   *Brick's Opinions Concerning Plaintiff's Motives or State of Mind*

Brick, in both his Report discussing Plaintiff's FCE and his deposition testimony, opines Plaintiff was "more interested in pursuing long-term disability than returning to work"  (*see* Doc. 30, p. 3, Ex. A - Brick Depo, pp. 14-16, 39-40, 66-68; Ex. B - FCE Report, pp. 2-3, 5-6).  First, he references Plaintiff's application for disability benefits, a collateral source, which Plaintiff argues is improper (and has filed a separate Motion in Limine in this regard).  In fact, Plaintiff notes that Brick was the one who actually asked Plaintiff whether she "signed up" for disability benefits.  Plaintiff then claims Brick twisted her words when she responded to his question – Plaintiff states that she never said she would rather receive disability benefits than go back to work (*see* Doc. 30, pp. 4-5). Second, Plaintiff argues that Brick is not competent to render such opinions as he is neither a medical doctor, a

---

[2]  Rule 702. Testimony by Experts

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

psychologist nor a vocational rehabilitation expert.  Brick did not base his opinion that Plaintiff intended to pursue disability rather than going back to work on any qualified expertise, medical opinion or facts; such opinion, Plaintiff argues, is beyond the expertise of an occupational therapist.

Plaintiff cites case law which holds that "an expert must be limited to opinion testimony in the area of expertise for which the proffering party can qualify the expert." (Doc. 30, p. 6, citing **Dutton v. United States, No. 04-CV-0103-DRH, 2006 WL 644536 at \*2 (S.D. Ill. 2006)(Herndon, J.)(citing Goodwin v. MTD Products, Inc., 232 F.3d 600 (7th Cir. 2000)**).  Defendant attempts to justify Brick's opinion as it was founded by the "battery of objective tests [performed] to assess Plaintiff's physical abilities," by which Brick "observed sub-maximal and self-limited efforts on the part of Plaintiff" (Doc. 44, p. 4, Ex. A - Brick Depo., pp. 13:17 - 15:6).  Defendant thereby asserts that it was Plaintiff's own comments, coupled with Brick's observations during the FCE, which properly led Brick to conclude Plaintiff was not interested in returning to work.

In her Reply, Plaintiff attempts to clarify that the issue is not Brick's qualifications as an Occupational Therapist, but "the inappropriateness of *any expert* attempting to offer opinions concerning a party's motive or state of mind" (Doc. 48, p. 1).  Lastly, Plaintiff reiterates that Brick admitted Plaintiff merely told him during the FCE that "she had signed up for it " (disability benefits) – she did not tell him she would rather pursue disability than go back to work (*Id.*, Ex. A - Brick

Depo, pp. 66-68).

The Court agrees with Plaintiff in this instance.  Mr. Brick is only being presented as an expert in the field of occupational therapy.  Therefore, any observations, opinions and conclusions he makes regarding Plaintiff should remain limited within that field of expertise.  Defendant offers nothing to convince the Court that Mr. Brick is qualified to render opinions regarding Plaintiff's motives.  Brick fails to connect this conclusion to any data or information he obtained as a result of his expertise as an Occupational Therapist or via the FCE he conducted on Plaintiff. Brick does not possess the requisite qualifications as a psychologist, psychiatrist or other medical background that would allow him to opine regarding Plaintiff's mental state or anything in that regard.  In this instance, Mr. Brick has crossed the line and, as such, any of his opinions, statements or conclusions that Plaintiff would rather pursue disability benefits than return to work are inadmissible under the Rule 702 and the ***Daubert*** standard.

b. *Brick's Statements and Opinions Concerning the Quality of Medical Care Plaintiff Received Prior to Seeing Him*

Plaintiff also takes issue with Brick's opinion that Plaintiff received good medical care prior to seeing him for the FCE.  Plaintiff argues this opinion should be excluded as pure speculation and outside of Brick's area of expertise.  First, Plaintiff states that Brick is not a medical doctor and secondly, he never even reviewed Plaintiff's medical records.  Instead, Brick admits that his opinion was formed based on the medical history Plaintiff verbally recounted to him during their

one-on-one interview, as part of the FCE.  Other than this verbal history, Brick had no specialized knowledge to form his opinion that Plaintiff had received adequate medical care.  Plaintiff also objects to Brick's use of his opinion to support his conclusion that Plaintiff should have already recovered from her injuries and therefore must be magnifying her symptoms (Doc. 30, p. 7, Ex. A - Brick Depo., pp. 13, 61-62).  Plaintiff asserts Brick fails to meet the Rule 702/*Daubert* standards that his opinion is: (1) based upon sufficient facts or data; (2) the product of reliable principles and methods; and (3) applied reliably to the facts of the case.

Defendant opposes, arguing that Brick's opinions are well-founded, due to his experience in assessing treatment for similar injuries.  Brick relied on what he believed to be an accurate and detailed self-history, provided verbally by Plaintiff during the FCE.  In support, Defendant cites case law that "an expert's opinions are not inadmissible merely because they are based on a patient's self-reported history" (Doc. 44, p. 5, citing ***Walker v. Soo Line R.R. Co., 208 F.3d 581, 586 (7th Cir. 2000)***).  Defendant analogizes that as physicians must sometimes rely on self-reported medical history, so, too, must Occupational Therapists.  Therefore, Defendant believes Brick can properly opine that Plaintiff received good medical care prior to seeing him for the FCE.

The Court does not find Defendant's opposing arguments convincing.  Mr. Brick is not a licensed M.D. and therefore cannot properly opine or draw conclusions regarding the standard of care rendered unto Plaintiff by her treating

physicians prior to her visit to Mr. Brick for the FCE.  Similarly, Mr. Brick also exceeds the limits of his field of expertise when he opines regarding Plaintiff's magnification of her symptoms or the time frame of her recovery.  Therefore, any opinions, statements or conclusions in this regards shall be inadmissible under the Rule 702 and **Daubert** standard.

      c.    *Brick Opinions Concerning Plaintiff's Lateral Disc Bulge*

Brick offered testimony that bulging discs typically resolve over time (Doc. 30, pp. 8-9, Ex. A - Depo, pp. 64-65).  He seems to indicate it merely involves the injured person taking "responsibility to learn about it, to educate themselves, exercise" to resolve non-surgically.  He supports this opinion with the fact that he has studied back injuries for 21 years, goes to seminars on back injuries held all over the country and reads all the literature (*Id*.).  However, Brick admitted during his deposition that his license does *not* permit him to diagnose bulging discs or to opine as to whether Plaintiff's bulging disc has resolved or can potentially resolve itself.  He also admits his license does *not* permit him to render a medical prognosis concerning a lateral prominent disc bulge (*Id*.).  Therefore, Plaintiff moves to strike Brick's statements and opinions in this regard because they are beyond his area of expertise and licensure as an Occupational Therapist.

Clearly, Plaintiff is in the right in seeking to bar these statements and opinions.  Mr. Brick, as an Occupational Therapist, does not possess the professional qualifications and experience to form such an admissible diagnosis.  It

is not within his field of expertise as an Occupational Therapist and to allow this evidence would be a violation of the Rule 702/**Daubert** standard.   Therefore, Mr. Brick's statements, opinions, conclusions or diagnoses regarding Plaintiff's lateral bulging discs or the resolution thereof is inadmissible.

d.   *Brick's Opinions that Plaintiff Can Manage her Symptoms by Taking "Self-Responsibility"*

Brick admits that during the FCE, while talking with Plaintiff, he "gave her some encouragement for life" (Doc. 30, p. 10, Ex. A - Depo, p. 73).   This, admittedly, was not a treatment plan – however, Brick seems to opine that Plaintiff merely need manage her symptoms by taking "self-responsibility."   Plaintiff argues this unsolicited opinion amounts to a "medical opinion regarding prognosis" that Brick is unqualified to render.

To the extent Mr. Brick renders his statements, opinions and/or conclusions regarding "self-responsibility" management as it relates to Plaintiff's functional capacity or other related areas in the field of occupational therapy, such is admissible.   However, any attempt Mr. Brick may make to further such statements, opinions and/or conclusions regarding "self-responsibility" as a means to resolve or lessen Plaintiff's underlying symptoms goes beyond the field of his expertise and is therefore inadmissible under the Rule 702/**Daubert** standard.

**B.      Plaintiff's Motion in Limine to Exclude Testimony & Evidence of Defendant's Retained Medical Expert, John P. Atkinson, M.D.**

**1.      The Parties' Arguments**

Plaintiff makes this motion pursuant to the expert witness standards of Rule 702 of the Federal Rules of Evidence and ***Daubert***.  Defendant retained Dr. Atkinson to examine Plaintiff and also review her medical records.  Dr. Atkinson is a rheumatologist.  Plaintiff does not contest his opinions/testimony offered on behalf of his medical opinion as to whether her injury was caused by her fall while working aboard Defendant's vessel.     Instead, Plaintiff moves to exclude several statements/opinions made by Dr. Atkinson (*see* statement list - Doc. 31, pp. 1-2).

Plaintiff first seeks to exclude Dr. Atkinson's proposed testimony or other written opinions regarding "Plaintiff's alleged disability seeking behavior," upon the basis that these opinions amount to nothing more than pure speculation and conjecture (*Id.*, pp. 3-6).  Specifically, Plaintiff also seeks to strike the entire section of Dr. Atkinson's report under the heading, "Disability Seeking Behavior" (*see* Doc. 30, Ex. A, pp. 2-3).  Dr. Atkinson reviewed the medical records and notes from Plaintiff's visits to both Dr. Schnapp and occupational therapist, David Brick, who performed a functional capacity evaluation of Plaintiff.  Dr. Atkinson includes many of the opinions and facts from these records in his own report.  Plaintiff argues this is an inappropriate regurgitation of facts, observations and opinion – mere cumulative testimony made inadmissible under Rule 403 of the Federal Rules of Evidence.  Defendant, in its Response (Doc. 43), counters that Dr. Atkinson's report

does not amount to cumulative evidence.  Rather, Dr. Atkinson uses the opinions and facts from other physicians and medical experts to render his own opinions of Plaintiff (*Id.*, pp. 1-2).  Defendant asserts that this type of analysis is expected of medical expert witnesses (*Id.*, citing **Walker v. Soo Line R. R. Co., 208 F.3d 581, 588 (7th Cir. 2000)**).

Plaintiff also objects to Dr. Atkinson's attempt to "redefine" Dr. Schanpp's use of the word "histrionic" to describe Plaintiff.  Plaintiff believes Dr. Atkinson has artfully translated "histronic" to instead mean "malingering" when describing Plaintiff (Doc. 31, p. 5 and Ex. A, p. 2).  Therefore, Plaintiff thinks Dr. Atkinson is inappropriately attempting to ascertain another physician's state of mind or true meaning.  Again, Defendant asserts Dr. Atkinson was merely utilizing these opinions in formulating his own.

Plaintiff next objects to Dr. Atkinson's report, which notes that the functional capacity evaluation that David Brick performed on Plaintiff was "the most extensive medical history and medical exam that the patient received," as Plaintiff feels it is merely an improper attempt to bolster Brick's own opinions (Doc. 31, p. 5, and Ex. A, p. 2).  Defendant responds, again stating Dr. Atkinson is merely formulating his own opinions, which he is entitled to do.

Lastly, Plaintiff objects to Dr. Atkinson's attempts to opine about Plaintiff's psychological issues, arguing that Dr. Atkinson is not medically qualified as an expert witness in this regard.  In other words, Plaintiff argues that it is

improper for Dr. Atkinson's to offer opinions that Plaintiff is a "malingerer," suffers from "compensation neurosis" or that her underlying motive is attributable to a "long-standing psychiatric illness" (Doc. 31, p. 6, Ex. A - pp. 2-3). Instead, the only opinion Dr. Atkinson is "arguably qualified to offer" is whether Plaintiff's osteoarthritis was caused by her fall. Conversely, Plaintiff feels Dr. Atkinson is not qualified to render such an opinion either on Plaintiff's psychological state or use her past mental history to diagnose her current condition. Accordingly, Plaintiff moves to exclude this evidence from Dr. Atkinson's report and preclude any such testimony, as being irrelevant and outside the scope of his expertise. Defendant again cites to *Walker*, asserting that a number of courts allow a medical expert witness to render opinions regarding mental capacity even though the expert is not a psychiatrist (Doc. 43, p. 4). Therefore, Defendant believes that Dr. Atkinson's opinions in this regard are admissible and Plaintiff will have sufficient opportunity to attack the weight of Dr. Atkinson's opinions during cross-examination.

### 2. Discussion

Considering the parties' arguments, the evidence before the Court and the pertinent law, Plaintiff's Motion in Limine regarding Dr. Atkinson (Doc. 31) must be **DENIED**, *but with the provision that Dr. Atkinson may not rely upon any of Mr. Brick's statements, opinions and/or conclusions that were found inadmissible previously in this Order, when ruling upon Plaintiff's Motion in Limine regarding David Brick* (Doc. 30). The Court finds that the Seventh Circuit allows for medical

experts of all specialities to draw opinions and conclusions regarding the validity of a patient's complaints.  Such opinions and conclusions can be based upon a review of the patient's medical records and reports regarding the patient, as well as a self-reported history.  Medical experts can also rely upon the opinions, observations, diagnoses and findings of other qualified persons in forming their own opinions and conclusions.  *See Walker v. Soo Line R.R. Co.*, **208 F.3d 581 (7th Cir. 2000)**. The Court does not find Dr. Atkinson's opinions to be too speculative, but Plaintiff will have the opportunity, during cross-examination, to challenge these opinions and to attack the weight of Dr. Atkinson's testimony.

**C.      Plaintiff's Motion in Limine Concerning Collateral Source Benefits**

    **1.      The Parties' Arguments**

Plaintiff moves to preclude any evidence, argument, testimony or reference to her attempt to seek disability benefits (or other collateral source benefits); Defendant also attempts to introduced evidence of collateral source benefits through the reports of two of its expert witnesses, David Brick and Dr. Atkinson, M.D., for which Plaintiff has also filed motions in limine.  Plaintiff argues that the prejudicial effect of such evidence would greatly outweigh the probative value of its admission, even if relevant, as courts have held that there are usually other means to show evidence of a plaintiff's malingering (Doc. 32).  Plaintiff cites to several cases, among them, *Eichel v. New York R.R.*, **375 U.S. 253 (1963)** and *Tipton v. Socony Mobil Oil Co., Inc.*, **375 U.S. 34 (1963)**.

Defendant responds, conceding that generally evidence of collateral source benefits are often excluded in Jones Act cases, but notes that there is no absolute ban and seeks the Court's discretion to admit it in this case, as *Eichel* does not establish a bright-line rule or absolute ban on introducing evidence of collateral source benefits (Doc. 51).  Defendant asserts that the probative value of admitting evidence of Plaintiff's collateral source benefits would outweigh the prejudicial effect; moreover, this evidence should be admissible if Plaintiff opens the door by introducing evidence that she is suffering from financial hardship as a result of her medical expenses.  Specifically, Defendant believes there is enough evidence that Plaintiff magnified her symptoms in order to receive disability benefits in the first place to necessitate the introduction of Plaintiff's application for disability benefits, in order to show she is not motivated to return to work.  Defendant feels that this evidence will only produce a slight risk of prejudice to Plaintiff, suggesting that a cautioning instruction to the jury (that it should consider Plaintiff's efforts to obtain disability benefits only as to the issue of malingering) could serve to eliminate such risk.  Lastly, Defendant states that the collateral source rule does not apply to benefits received by Plaintiff under Defendant's long term disability plan and so evidence in this regard should be admissible, as these benefits are actually applied as a setoff, intended to indemnify Defendant, in part, from its liability.

**2.    Discussion**

Although the Court agrees with the reasoning in ***Eichel*** and believes the introduction of collateral source benefits would serve to confuse the jury rather than to properly shed light on the issue of malingering, as Plaintiff has now opted for a bench trial, this concern ceases to exist.  Therefore, as the Court is assured it will not be similarly confused, this evidence may be introduced.  As such, Plaintiff's Motion (Doc. 32) is **DENIED**.

**D.    Plaintiff's Motion in Limine to Strike Non-Responsive Answers of David Brick, As Well As Improper Questions by Defense Counsel**

**1.    The Parties' Arguments**

Plaintiff moves to strike several non-responsive answers from David Brick's deposition testimony.  Brick is an occupational therapist who conducted a functional capacity evaluation on Plaintiff.   The first of Brick's answers Plaintiff challenges was given during direct examination at his deposition, when he was asked to "summarize" the results of his examination of Plaintiff.  Brick went on to state within his summary that Plaintiff "had appropriate treatment at the time . . . [s]he was continuing to see Dr. Schnapp . . ." (Doc. 33, p. 2, Ex. A - depo testimony, pp. 13-15).  He also testified that Plaintiff had diagnostic testing, told him she did not have a plan to return to work and also commented that "she was more interested in pursuing long term disability status . . . [it] appeared to be the primary factor for her" (*Id*.)  Plaintiff notes these statements in Brick's deposition are the subject of another motion in limine.

Another non-responsive answer challenged by Plaintiff was given during Brick's cross-examination: Brick was asked whether Plaintiff's movements during the functional capacity evaluation would be consistent with someone who suffered from a bulging disc in their back.  He answered "Yeah.  But also consistent with a person's got no goals of doing anything . . . .  She told me she's riding a stationary bicycle at home.  Well she doesn't show that kind of effort during this evaluation" (Doc. 33, p. 3, Ex. A, pp. 45-46).  Plaintiff also moved to strike this response during the deposition.

Plaintiff further asserts that defense counsel asked several improper leading questions on direct and re-direct examination, prohibited by Rule 611(c)(1) of the Federal Rules of Evidence.  Additionally, Plaintiff states that many questions were "asked and answered" by Brick and therefore, should be stricken (*see* Doc. 33, pp. 3-5 for list of questions/answers to strike).

Defendant responds in opposition (Doc. 45), stating that Brick's comments were made to qualify his answers – answers which served to explain his observations of Plaintiff during the functional capacity evaluation.   Further, Defendant believes these "leading" questions Plaintiff takes issue with are within the Court's discretion to admit and will not serve to prejudice Plaintiff.  These "leading" questions, Defendant explains, did not attempt to suggest a particular answer to Brick.  He was still free to answer them in the affirmative or negative.  Even if the Court finds them to be leading, they should be allowed as they solicit an answer that

"is not seriously disputed" and were based largely on Brick's prior (unobjectionable) testimony.  Instead, these "leading" questions relate to collateral matters and should be allowed.

### 2.    Discussion

Upon review of the parties' respective briefs and the deposition transcript for David Brick, the Court finds that the non-responsive answers challenged by Plaintiff in her Motion (Doc. 33), are instead responsive, as Mr. Brick qualified the answers given with responsive explanation.  These challenged comments/answers are Brick's observations made during the functional capacity evaluation he conducted on Plaintiff.  Because it is a discretionary matter, the Court will not exclude this testimony.  *See United States v. Nickels*, **502 F.2d 1173, 1178 (7th Cir. 1974)**.  Additionally, the Court may, in its discretion, permit leading questions on direct or re-direct examination of a witness.  *See Arnold v. United States*, **7 F.2d 867, 869 (7th Cir. 1925)**.  The questions were based upon Brick's prior testimony given during his deposition and do not appear to be posed for the purpose of eliciting certain responses not already part given by the witness. Therefore, Plaintiff's Motion in Limine (Doc. 33) is **DENIED**.

### E.    Defendant's Motion in Limine to Prohibit Plaintiff from Claiming Loss of Normal Life as a Separate Element of Damage

### 1.    The Parties' Arguments

Defendant notes that in her Complaint, Plaintiff claims damages for both "pain and suffering" and "loss of life's enjoyment."  For this reason, Defendant

anticipates Plaintiff may claim separate damages for these, but asserts that under the Jones Act, loss of normal life is not a separate and independent element of damages; it is part of the element of pain and suffering (Doc. 34).  Therefore, Defendant moves to prohibit Plaintiff from attempting to seek recovery for loss of normal life damages, separate from damages for pain and suffering.  In her Response (Doc. 41), Plaintiff states that she does not intend to suggest a separate line item on the verdict form for "loss of life's enjoyment."  However, she does request that she be permitted to make reference to the effect her injuries will have on her capacity for enjoyment of life, loss of life's enjoyment or any other similar descriptions, as these may be considered in awarding damages.

       **2.**    **Discussion**

The Court finds that because Plaintiff has responded that she does not intend to make separate claims for the two types of damages, Defendant's need to prevent her from doing so are obviated.  Further, her intent to reference the effect of her injuries is permissible (if done properly within the confines of the Federal Rules of Evidence).  Accordingly, the Court **FINDS AS MOOT** Defendant's Motion in Limine (Doc. 34).  However, Defendant may make objection if Plaintiff subsequently attempts to claim loss of normal life as a separate element of damages from pain and suffering.

**F.     Defendant's Motion in Limine to Exclude Evidence of Insurance Coverage**

Defendant moves in order to ensure that during trial, Plaintiff's counsel does not refer to any liability insurance coverage used to cover Defendant's damages if Plaintiff prevails (Doc. 35).   Plaintiff responds (Doc. 42), stating she has no intention of referring to the existence of this insurance during trial and agrees to Defendant's request.   Therefore, in light of Plaintiff's willingness to abide by Defendant's request, the Court **FINDS AS MOOT** Defendant's Motion in Limine (Doc. 35).

**G.     Defendant's Motion in Limine to Admit Evidence of Maintenance and Cure Payments**

**1.     The Parties' Arguments**

Defendant, in its Motion in Limine (Doc. 36), requests that if Plaintiff's medical bills are referenced during trial, that Defendant be allowed to present evidence it paid her bills in accordance with its maintenance and cure obligation under maritime law.  In response (Doc. 46), Plaintiff states that she has no intention of mentioning any *past* medical bills Defendant has paid, but requests that she be able to refer to her outstanding medical bills (as she will be making a claim for payment) and *future* medical care – all without Defendant being allowed to introduce evidence of any past cure payments.  Also, Plaintiff argues that any maintenance and cure payments Defendant has already paid for Plaintiff's injuries should have nothing to do with her claim for medical bills (unpaid and future) and Defendant should therefore be precluded from introducing this evidence.

**2.     Discussion**

Considering the parties' arguments, the Court finds that Plaintiff's position prevails.  Therefore, Defendant's Motion in Limine (Doc. 36) is **DENIED**. Accordingly, Plaintiff shall not refer to her past medical bills which have been paid by Defendant.  However, Plaintiff will be allowed to refer to her outstanding medical bills and her future medical care, if these costs will be calculated into her prayer for damages.

**H.     Defendant's Motion in Limine to Prohibit Emphasis of Defendant's Corporate Status**

**1.     The Parties' Arguments**

Defendant seeks to prohibit Plaintiff's counsel from referring to Defendant's corporate status, as the fact it is a corporation will be obvious already to the jury and continued reference could prejudice jury members who may harbor resentment against corporations.  Plaintiff responds (Doc. 40) that her counsel has no intention of "emphasizing" Defendant's corporate status, but should be allowed to refer to Defendant by its legal name, "TECO Barge Line, Inc.," since that is the name of the proper party defendant in this suit.  Plaintiff also states she has no problem with the Court giving the jury a limiting instruction explaining that a corporation is entitled to the same fair trial as a private individual.

**2.     Discussion**

In light of the fact that Plaintiff has now amended her Complaint to bring her claims in admiralty, pursuant to the Jones Act, and has *not* demanded a jury,

many of Defendant's issues are no longer of concern.  Therefore, Defendant's Motion in Limine (Doc. 37) is **DENIED**, as Defendant can be assured the Court will not be prejudiced by Plaintiff's reference to Defendant's corporate status.

I.    **Plaintiff's Motion in Limine to Preclude Evidence or Inquiry Concerning Specific Acts of Plaintiff's Retained Medical Expert**

1.    **The Parties' Arguments**

Plaintiff moves, pursuant to Federal Rules of Evidence 403, 404(b), and 608(b) to preclude Defendant from offering evidence or cross-examining her medical witness, Dr. Barry Feinberg, M.D., concerning specific acts of misconduct, as such would constitute improper character evidence (Doc. 58).  Plaintiff argues that this evidence would be irrelevant and could lead to unfair prejudice and confusion of the issues.  Apparently, Dr. Feinberg was in a money dispute with his former business associates, with whom he operated a medical practice – spawning a 1997 civil lawsuit in St. Louis County Circuit Court.  Plaintiff also asserts that specific instances of Dr. Feinberg's conduct may not be proved via extrinsic evidence under Federal Rule of Evidence 608(b).  According to Plaintiff, Defendant's counsel questioned Dr. Feinberg quite extensively regarding this dispute during his deposition.  Therefore, Plaintiff moves to preclude such questioning at trial, the basis of her argument being that Defendant should only be allowed to attack Dr. Feinberg's competence as an expert, *not* his credibility on a matter collateral to his area of expertise.  Further, Plaintiff adds that the prejudice caused by such questioning will certainly outweigh the  probative value (Doc. 59, pp. 6-7).

As other grounds for preclusion of this line of questioning, Plaintiff proffers that under Federal Rule of Evidence 608, even if Defendant's counsel questions Dr. Feinberg regarding his 1997 civil lawsuit and Dr. Feinberg, in turn, denies that he acted fraudulently, Defendant's counsel will thereafter undoubtedly ask of the jury verdict in that case. When Dr. Feinberg is compelled to answer this question, it will amount to an extrinsic attack on Dr. Feinberg's character. In support of her argument that such information would be more prejudicial than probative, Plaintiff offers the fact that there is no evidence Dr. Feinberg has been a less than credible witness the countless times he has previously testified as a medical expert. Also, Plaintiff predicts it would unnecessarily prolong trial as the issues of Dr. Feinberg's civil suit were long and complex; if Defendant's counsel were to cross-examine Dr. Feinberg about the suit, Plaintiff's counsel would then be forced to derive extensive testimony concerning the facts and circumstances of Dr. Feinberg's prior relationship with his former business associates to properly place the matter into context.

Defendant has Responded (Doc. 60) in opposition, arguing that it was Plaintiff's own decision to retain Dr. Feinberg as her medical expert and therefore, she should have to deal with the consequences of her choice. Further, Defendant explains that evidence regarding this lawsuit would be introduced to attack Dr. Feinberg's credibility and is thus admissible under Rule 404(b). First, Defendant argues that Rule 404(b) is actually not applicable in this case as evidence of the

judgment in the civil lawsuit which included allegations that Dr. Feinberg acted fraudulently would only be introduced during cross-examination and not as part of Defendant's case in chief.  In support, Defendant cites ***United States v. Cerro*, 775 F.2d 908 (7th Cir. 1985)(Rule 404(b) admissibility applies to evidence in chief, not impeachment evidence)** (Doc. 60, pp. 2-3).  Rule 404 allows impeachment of a witness in accordance with Federal Rules of Evidence 607, 608 and 609.

Defendant also asserts that Plaintiff's argument that Rule 608(b) prohibits such evidence is unavailing.  Defendant notes Plaintiff's citation to a committee note accompanying the 2003 amendments to Rule 608(b) and claims that a similar argument was rejected by the Seventh Circuit in ***United States v. Dawson*, 434 F.3d 956, 958 (7th Cir. 2006)**.  Instead of defining it as extrinsic evidence, the Seventh Circuit found that such direct questioning of the witness regarding a prior judge/jury finding would be outside of the scope of Rule 608(b) – instead, the scope of cross-examination is within the trial judge's discretion.  ***Id.***  However, it would be improper under FRE 608(b) to ask a witness, during cross-examination, whether the judge in a prior case found the witness to be credible, because if he answered in the negative, counsel should not be allowed to then introduce extrinsic evidence regarding that judge's findings.

Next, Defendant argues that even though admission of this evidence may be prejudicial to Dr. Feinberg, yet, such prejudice must be "unfair" in order to be excluded.  Moreover, Defendant believes that the probative value into Dr. Feinberg's

credibility outweighs any prejudice.  Dr. Feinberg's testimony goes to medical causation of Plaintiff's injuries; this is the only testimony of its kind Plaintiff will offer.  Defendant asserts that this trial will amount to a battle of the expert witnesses – the trier of fact to determine which expert is more believable.  Therefore, Defendant feels  it should be allowed to shed light on all relevant matters relevant to Dr. Feinberg's credibility.  Defendant lastly states that it does not intend to solicit any of this information through extrinsic evidence.

    **2.**    **Discussion**

        Plaintiff has made this Motion (Doc. 58), pursuant to Federal Rules of Evidence 403, 404(b) and 608(b).  The Seventh Circuit has combined the evidentiary requirements expressed in **Rules 404(b)** and **403** into a four-prong test to govern the admission of prior bad acts evidence.  ***See United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999)(citations omitted)**.  According to the Seventh Circuit, "[e]vidence of prior crimes, wrongs, or acts may be admitted when: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." ***Id.*  A court's decision to admit or exclude evidence based upon this four-prong test, in accordance with **Rules 404(b)**

**and 403**, are reversible only for an abuse of discretion.  ***United States v. Harrod***, **856 F.2d 996, 999 (7th Cir. 1988)(citing *United States v. Chaimson*, 760 F.2d 798, 808 (7th Cir.1985) (quoting *United States v. Brown*, 688 F.2d 1112, 1117 (7th Cir.1982))**.

Regarding the concern that such evidence causes undue prejudice which substantially outweighs its prejudicial value, as this matter is now a bench trial, the Court does not foresee this to be a concern.  Evidence of the civil lawsuit involving Dr. Feinberg as a party will not work a prejudice upon this Court that is either undue or that substantially outweighs the prejudicial value of the information.  So Plaintiff's argument in this regard is of little impact.   Moreover, as Defendant cites in its Response, the Seventh Circuit finds Rule 404(b) limitations applicable only "to evidence in chief, not impeachment evidence."  ***Cerro*, 775 F.2d at 915**.  Defendant has stated that it intends to use this evidence solely for purposes of impeaching Dr. Feinberg's credibility as a witness, which is permitted.

Further, Defendant has stated it does not intend to try to introduce the information concerning the allegations and jury finding involving Dr. Feinberg through extrinsic evidence.  However, Rule 608 makes it a matter of court discretion to allow a party to use extrinsic evidence during cross-examination of a witness, if probative of that witness' character or truthfulness.  ***See, e.g., Dawson*, 434 F.3d at 958**.  In the instant matter, the Court finds that issues regarding the credibility of any witness is important; Dr. Feinberg is no exception.

For these reasons, Plaintiff's Motion in Limine (Doc. 58) is **DENIED**. Defendant shall be allowed to inquire during cross-examination of Dr. Feinberg regarding the allegations of fraud made against him and the judgment entered in the civil suit in which Dr. Feinberg was a party.

### III. CONCLUSION

Based upon the foregoing discussion, the Court determines the following:

Plaintiff's Motion in Limine to Exclude the Testimony and Evidence of Occupational Therapist David Brick (Doc. 30) is hereby **GRANTED;**

Plaintiff's Motion in Limine to Exclude Testimony & Evidence of Defendant's Retained Medical Expert, John P. Atkinson, M.D., (Doc. 31) is hereby **DENIED**[3];

Plaintiff's Motion in Limine Concerning Collateral Source Benefits (Doc. 32) is hereby **DENIED**;

Plaintiff's Motion in Limine to Strike Non-Responsive Answers of David Brick, As Well As Improper Questions by Defense Counsel (Doc. 33), is hereby **DENIED**;

Defendant's Motion in Limine to Prohibit Plaintiff from Claiming Loss of Normal Life as a Separate Element of Damage (Doc. 34) is hereby **FOUND AS**

---

[3] With the understanding that Dr. Atkinson may not rely upon any of Mr. Brick's statements, opinions and/or conclusions that were found inadmissible previously in this Order, when ruling upon Plaintiff's Motion in Limine regarding David Brick (Doc. 30).

**MOOT**;

Defendant's Motion in Limine to Exclude Evidence of Insurance Coverage (Doc. 35) is hereby **FOUND AS MOOT**;

Defendant's Motion in Limine to Admit Evidence of Maintenance and Cure Payments (Doc. 36) is hereby **DENIED**;

Defendant's Motion in Limine to Prohibit Emphasis of Defendant's Corporate Status (Doc. 37) is hereby **DENIED**; and

Plaintiff's Motion in Limine to Preclude Evidence or Inquiry Concerning Specific Acts of Plaintiff's Retained Medical Expert (Doc. 58) is hereby **DENIED**.

**IT IS SO ORDERED**.

Signed this 5th day of February, 2007.

/s/ _____ David  RHerndon
**United States District Judge**