IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BETTY FROST,**

 **Plaintiff,**

**v.**

**TECO BARGE LINE, INC.**

 **Defendant.**         Case No. 04-cv-752-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

### I. INTRODUCTION

  Before the Court are two Motions in Limine, filed by Defendant (Docs. 63 & 67). The first (Doc. 63) seeks to exclude testimony and opinions of Plaintiff's expert, Dr. Barry Feinberg. The latter (Doc. 67) seeks to exclude the testimony and opinions of Dr. Moacir Schnapp. This suit was brought by plaintiff Betty Frost pursuant to the Jones Act, for personal injuries she alleges to have sustained to her lower back during her employ as a cook aboard a tow boat belonging to defendant, TECO Barge Lines, Inc. For this reason, Plaintiff has sued Defendant for damages, claiming Defendant was negligent in failing to provide a safe work environment and seaworthy vessel.

  Plaintiff has retained Dr. Barry Feinberg, M.D., as an expert witness. Part of his testimony Plaintiff intends to elicit is whether Plaintiff can return to work

as a cook aboard a tow boat. Defendant anticipates Plaintiff may go so far as to elicit expert testimony from Dr. Feinberg regarding Plaintiff's future employability (ability or inability to secure employment), which Defendant contends the doctor is not qualified to render. Similarly, Dr. Moacir Schnapp is one of Plaintiff's treating physicians. During his deposition, Dr. Schnapp opined as to whether Plaintiff could return back to work as a cook aboard Defendant's tow boat and also whether the alleged fall is the root cause of her pain. Apparently, Plaintiff will attempt to admit this deposition testimony during trial in lieu of Dr. Schnapp's live testimony. Defendant moves to exclude such testimony (Doc. 67) based upon the argument that Dr. Schnapp based his opinions on the incorrect assumption that Plaintiff had no complaints of back pain prior to her alleged fall on Defendant's tow boat in January, 2004.

For the following reasons, the Court **DENIES** Defendant's Motion in Limine (Doc. 63) regarding Dr. Feinberg and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion in Limine (Doc. 67) regarding Dr. Schnapp.

## II. ANALYSIS

1. **Legal Standard**

Rule 702 of the Federal Rules of Evidence requires that a district court ensure admitted scientific evidence is reliable and also relevant to the trier of fact (pursuant to Rule 402 of the Federal Rules of Evidence). ***See also***, ***Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)**. In short, scientific evidence is reliable if it is "well-grounded in methods and procedures of science." ***Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002)(citing *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 536 (7th Cir. 2000))**. As such, the focus must be on the theory, principles and methodology of the evidence or scientific testimony, and not merely the conclusions generated. ***Id.* (citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996))**. ***Daubert*** set out a nonexclusive list of factors or guidelines for a district court to consider when analyzing the reliability of scientific evidence: (1) whether the theory can be and has been verified by the scientific method through testing; (2) whether the theory has been subjected to peer review; (3) the known or potential rate of error; and (4) the general acceptance of the theory in the scientific community. ***Cummins*, 93 F.3d at 368**. **Rule 702** speaks of testimony qualified on the basis of whether (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The test under **Daubert** is flexible, and there is "no requirement that an expert's testimony satisfy each of the listed factors." **Chapman, 297 F.3d at 687**. Considering whether such evidence is relevant, it is crucial that the expert "'testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury.'" **Dhillon v. Crown Controls Corp., 269 F.3d 865, 871 (7th Cir. 2001)(citing Ancho v. Penteck Corp., 157 F.3d 512, 519 (7th Cir. 1998))**. A district court, therefore, plays the role of "gatekeeper" when determining whether to allow scientific evidence and/or expert testimony to be admitted at trial. **Cummins, 93 F.3d at 370**.

2.  **Dr. Barry I. Feinberg, M.D.**

In its Motion in Limine regarding Dr. Feinberg and supporting memorandum (Docs. 63 & 66), Defendant concedes that Dr. Feinberg may be qualified, as a licensed medical doctor, "to render opinions on certain medical issues" (Doc. 66, p. 4). However, Defendant patently opposes any opinions Dr. Feinberg may offer during trial as Plaintiff's expert witness, concerning whether Plaintiff can return to work in the same or similar capacity as prior to her alleged injury. In support, Defendant cites to transcript excerpts of Dr. Feinberg's deposition, where he admits he is neither a vocational rehabilitationist nor an occupational therapist (*Id.*, Ex. A. - Feinberg Dep.). Dr. Feinberg further stated, during his deposition, that he had no opinion, one way or another, whether or not Plaintiff could return to work (*Id.*). By way of Dr. Feinberg's own testimony,

Defendant argues that he is clearly not qualified to render opinions concerning Plaintiff's future employability.  Additionally, Defendant asserts that such expert testimony would amount to pure speculation and therefore would not meet the reliability threshold under **Federal Rule of Evidence 702** and ***Daubert*** (*Id*. at 5).

In Response (Doc. 69), Plaintiff first clarifies that she does not "intend to elicit vocational testimony from Dr. Feinberg concerning what range of jobs are currently available to Plaintiff in the labor market or what they pay." Yet, this does not nullify Defendant's concerns, as Plaintiff states that she "does intend to elicit Dr. Feinberg's opinions concerning Plaintiff's physical restrictions and limitations and whether those limitations or restrictions preclude her from returning to work as a cook aboard a tow boat, as well as any other physically demanding job that would exceed those restrictions and limitations" (*Id*. at 1).  Plaintiff argues Dr. Feinberg, although not a vocational rehabilitation expert, is completely qualified to render such opinions due to his expertise as a medical doctor.

Reviewing Dr. Feinberg's opinions, as provided by Plaintiff in her Response (Doc. 69), it appears Defendant's argument is not well-taken.  It is clear that Dr. Feinberg's opinions regarding whether Plaintiff can return to work are based upon his observations and diagnoses of her current physical conditions and limitations.  This, in turn, is based upon Dr. Feinberg's review of Plaintiff's medical history, her medical records, the results of his physical examination of Plaintiff, her functional capacity evaluation results and various test reports.  As a qualified medical doctor, upon a review of this compilation of data, Dr. Feinberg may then

properly deduce the nature of Plaintiff's current disability in order to prescribe treatment and outline various restrictions she should heed concerning her daily activities. When the restrictions are then compared with the physical demands of any type of activity, including one's employment, a medical doctor can then determine whether such activities exceed one's restricted physical abilities. ***See e.g., Sulentich v. Interlake S.S. Co.*, 257 F.2d 316, 319 (7th Cir. 1958)(as implied by jury instruction regarding the defendant's affirmative defense, an examining physician may determine an employee is not fit to work on the ship in light of medical history of previous injuries)**. The Court holds that Dr. Feinberg's opinions should be admitted and therefore, Defendant's Motion in Limine (Doc. 63) is denied.

**3.     Dr. Moacir Schnapp, M.D.**

Defendant states that Plaintiff intends to introduce Dr. Schnapp's testimony at trial by way of his deposition testimony (Doc. 67). Defendant challenges Dr. Schnapp's testimony on two fronts: (1) opinions regarding Plaintiff's inability to work as a cook on Defendant's tow boat; and (2) opinions regarding the causation of Plaintiff's current pain.

Defendant first takes issue with the following deposition testimony from Dr. Schnapp:

> Q:     Okay. Doctor, if you assume that the position of a cook onboard a river tow boat requires the individual to walk for one mile a day, routinely climb ladders, life and carry at least 30 pounds, grip and pull objects weighing 40 pounds and stoop, bend and squat as well as reach and work overhead, do you have any opinions as to whether or not Ms. Frost would be able to perform

>> those duties with respect to her back condition as you have treat it?
>
> ***
>
> A:  There are two ways to look at this. Based on the complaints that she voiced to me, I think it would be very difficult for her to return to her job as a cook, On the other hand, she did have a functional capacity assessment with Dr. David Breck (*sic*.) which essentially dis not place much limitation on her capacity. So it's a difficult call.

(Doc. 68, pp. 3-4, Ex. A - Schnapp Dep.)

Dr. Schnapp also testified that Plaintiff suffers from "a multi-factorial problem," consisting of peripheral neuropathy, obesity, degenerative disc and joint disease, and chronic low back pain. From these conditions, Dr. Schnapp was unable to opine as to what percentage (if any) of each malady was attributable to Plaintiff's inability to return to work as a cook aboard Defendant's tow boat. Defendant argues that this testimony will only serve to confuse the jury, as it is speculative and unreliable.

Plaintiff, in her opposing Response (Doc. 70), counters that Dr. Schnapp's testimony will not confuse the jury – although Dr. Schnapp acknowledges the findings of Mr. Brick regarding Plaintiff's physical abilities, he maintains his own separate opinion in this regard (*Id*. at 3). Plaintiff cites to later testimony during Dr. Schnapp's deposition, in which he states that he disagrees with Mr. Brick's findings that Plaintiff has no limitations (*Id*. at 4, citing Schnapp Depo, pp. 36-37). Additionally, Plaintiff observes that there is no longer an issue of jury confusion, as this case will now result in a bench trial.

Defendant secondly objects that Dr. Schnapp is not qualified to offer opinions regarding Plaintiff's employability (i.e., whether she can return to work); he is not qualified as a vocational or occupational rehabilitationist and therefore, such opinions would exceed the scope of his expertise. Plaintiff, in response, states that she does not intend to elicit Dr. Schnapp's opinion testimony regarding which jobs would be most suitable for Plaintiff, given her current physical condition. Instead, Dr. Schnapp's opinions will be offered for the purpose of whether Plaintiff, given her physical limitations and restrictions, can return to work as a cook aboard a tow boat. Plaintiff argues that this is "entirely appropriate medical testimony" for Plaintiff's treating physician to render.

Defendant lastly seeks to exclude Dr. Schnapp's opinions regarding causation. Specifically, Defendant finds fault with the fact that Dr. Schnapp conceded during his deposition that he was under the flawed assumption that Plaintiff did not suffer from back pain prior to her fall aboard Defendant's tow boat. Initially, Dr. Schnapp testified that the accident would have triggered Plaintiff's pain, assuming was not previously suffering from such pain. He then testified that if Plaintiff did suffer from back pain prior to her injury, he would have to "re-evaluate" his opinion regarding the source (or cause) of Plaintiff's pain. Defendant offers that the medical records establish that Plaintiff had several prior complaints of back injury. Because Dr. Schnapp's opinions regarding the causation of Plaintiff's current physical pain was based upon a flawed assumption, Defendant asserts it should be excluded as speculative and unreliable.

Plaintiff contests the magnitude and severity of her prior complaints of back pain, stating that she merely strained her back and was only prescribed a pain reliever – she remained neurologically intact with a full range of motion (Doc. 70, p. 11). Therefore, Plaintiff argues that even if Dr. Schnapp would have weighed this into his initial testimony, his opinion would have remain unchanged. Plaintiff also cites to certain deposition passages where her attorney, on redirect, asks Dr. Schnapp to assume Plaintiff had experienced a slight degree of back pain prior to her injury:

> Q: All right. And to the extent someone has perhaps a fleeting episode of some back pain, but that that pain doesn't interfere with their activities, doesn't require them to come off of work or interfere with their lifestyle in any significant degree, would that character of pain be something that would for example cause you to change your opinion testimony with respect to causation in this case?
>
> A. We're getting more into hypothetical questions, and I don't know if I have an answer for that.
>
> Q: All right. Well, I guess, let me just try to ask a simpler question, Doctor. If for example Ms. Frost had at some time in her lifetime prior to January of '04 let's say, you know, experienced some degree of back pain, but that it didn't interfere with her activities and didn't last, you know, more than a day or two, would that have any impact on your opinion with respect to causation that you've offered here today?
>
> ***
>
> A. If this is the extent of the pain, if we're talking about a minor problem, more of a nuisance than actually a severe incapacitating pain, I don't think it would have made much difference on my diagnosis.

(Schnapp Dep., pp. 65-68.)

The Court grants in part and denies in part Defendant's Motion in Limine (Doc. 67) regarding Dr. Schnapp. As to Defendant's first argument that Dr. Schnapp's opinions regarding whether Plaintiff is physically capable of returning to work, the Court finds that this testimony is admissible. As Plaintiff explains, Dr. Schnapp is not offering vocational testimony concerning what type of jobs may now suit Plaintiff's physical condition. Instead, he is basing his opinion based upon his medical expertise and examinations while treating Plaintiff. Therefore, much as the Court found regarding Dr. Feinberg's opinions, it is entirely appropriate for Dr. Schnapp to opine as to whether Plaintiff will be able meet the physical demands of her job as a cook aboard Defendant's tow boat. Further, the gatekeeping function of preventing jury confusion is no longer an issue. **See Walker v. Soo Line R.R. Co., 208 F.3d 581, 589 (7th Cir. 2000)("That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible.")(internal citation omitted)**.

Conversely, the Court agrees with Defendant's argument that Dr. Schnapp's opinions regarding causation should be excluded as speculative and unreliable. Although the parties differ as to the severity of Plaintiff's back pain prior to her injury aboard Defendant's tow boat, the fact remains that she indeed experienced *some* degree of prior pain that may relate to the causation of her current pain. Dr. Schnapp should have therefore also taken this information into account

when formulating his opinion regarding causation. Plaintiff's rehabilitative questioning during Dr. Schnapp's deposition does not suffice to remedy the problem. It is not enough for Plaintiff's attorney to offer a hypothetical regarding his own assessment of the severity of Plaintiff's prior pain. Instead, Dr. Schnapp's causation opinions should be based upon the doctor's own review of Plaintiff's medical records concerning her prior pain.

Thus, his opinions remain unreliable as they were based upon a flawed assumption of Plaintiff's physical condition prior to her injury while working aboard Defendant's tow boat. Accordingly, Dr. Schnapp's opinion testimony concerning causation, as stated in his deposition testimony, is inadmissible. In this instance, the Court believes that allowing these opinions would go against the requirements set forth under **Federal Rule of Evidence 702**. Dr. Schnapp's opinions were not formulated using well-grounded methods and procedures used by physicians when determining medical causation of injury in a Jones Act case. As it is a critical issue surrounding Plaintiff's claims, all pertinent facts regarding causation should be considered by the doctor before forming an opinion – not afterwards. *See Cella v. United States*, **998 F.2d 418, 423 (7th Cir. 1993)("The pertinent inquiry under Rule 703 is whether the particular facts or data relied upon by the expert in formulating the expert opinion are of a type reasonably relied upon by other experts in the field. Under this rule, expert testimony must be rejected if it lacks an adequate basis in fact.")**

This is not to say Dr. Schnapp cannot testify at trial and render his medical opinion regarding causation, providing he has re-evaluated his opinion, taking into account the medical information concerning Plaintiff's prior pain. However, his deposition testimony in this regard cannot be introduced as evidence of causation during trial.

### III. CONCLUSION

Defendant's Motion in Limine to Exclude Testimony and Opinions of Plaintiff's Expert Dr. Barry I. Feinberg (Doc. 63) is **DENIED**. Defendant's Motion in Limine to Exclude Testimony and Opinions of Dr. Moacir Schnapp (Doc. 67) is **GRANTED IN PART AND DENIED IN PART**. The Court finds Dr. Schnapp's deposition testimony regarding causation of Plaintiff's pain due to her alleged injury while working as a cook aboard Defendant's tow boat is inadmissible as speculative and unreliable. However, the remainder of Defendant's objections to Dr. Schnapp's deposition testimony are found unavailing.

**IT IS SO ORDERED.**

Signed this 15th day of February, 2007.

/s/      David RHerndon
**United States District Judge**